```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                           Norfolk Division
```

**DAVID BARNER,**

        **Plaintiff,**

  **v.**                                              **ACTION NO. 2:05cv713**

**GENE JOHNSON, Director,**
**Virginia Dept. of Corrections,**
**HARVARD STEPHENS, Chief Physician,**
**Virginia Dept. of Corrections,**
**FRED SCHILLING, Health Director,**
**Virginia Dept. Of Corrections,**
**ED WRIGHT, Chief Warden,**
**Lawrenceville Correctional Center,**
**BOYD M. CLEMENTS, Medical Director,**
**Lawrenceville Correctional Center,**
**T. MOODY, Medical Records Clerk,**
**V. SMITH, Medical Records Clerk,**
**W. LANGFORD, R.N., and**
**MARY GARNER, R.N.,**

        **Defendants.**

<u>**MEMORANDUM DISMISSAL ORDER**</u>

Plaintiff, a Virginia inmate, brings this <u>pro se</u> action pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights. Specifically, plaintiff claims that defendants are deliberately indifferent to the pain he suffers from a bullet fragment in his left axilla. Plaintiff alleges that this bullet fragment has caused a host of symptoms such as headaches, sharp spinal pain, burning eyes, chest pains, numbness on his left side, and shooting pains in his lower back and legs. Plaintiff

brings this action because defendants refuse to provide him with surgery to have the bullet fragment removed. Plaintiff seeks $15,000,000.00 and declaratory relief. This matter is before the court on defendants' motions to dismiss and for summary judgment.

### I. Procedural History[1]

On December 7, 2005, plaintiff brought this action against defendants Johnson, Stephens, Schilling, Wright, and Clements. Simultaneously, plaintiff filed a motion to add defendants Moody, Smith, Langford, and Garner. By order entered December 13, 2005, the court granted plaintiff's motion to amend. On January 3, 2006, plaintiff submitted additional documents for inclusion with his complaint (Docket No. 5). On January 17, 2006, plaintiff submitted an additional packet of documents for inclusion in the complaint (Docket No. 6). On February 8, 2006, plaintiff filed a motion to amend (Docket No. 9). By Order entered March 3, 2006, the court granted plaintiff's motion to amend and ordered the complaint, along with all amendments and supplements, to be served on defendants. Thus, the complaint consists of Docket Numbers 1, 5, 6, and 9.

On May 2, 2006, defendants Johnson, Stephens, and Schilling filed a motion for summary judgment (Docket No. 20) with a

---

[1] The procedural history for this case is complicated by numerous motions that have no relevance to consideration of the merits of the complaint. Therefore, the court will confine the procedural history to those documents that are necessary to the consideration of defendants' dispositive motions currently before the court.

memorandum and affidavits in support (Docket No. 21), and defendants Moody, Smith, Wright, and Langford filed a motion to dismiss (Docket No. 24) with a memorandum in support (Docket No. 25).  By order entered June 2, 2006, the court ordered plaintiff to submit identifying information for defendant Garner.  On June 15, 2006, plaintiff asked the court to dismiss defendants Moody and Smith. On June 19, 2006, plaintiff responded to defendants' motion to dismiss and for summary judgment (Docket No. 32).  By order entered August 8, 2006, the court dismissed defendants Moody and Smith.

On August 15, 2006, defendant Dr. Clements filed a motion for summary judgment (Docket No. 55) and a memorandum in support (Docket No. 56).  By order entered September 29, 2006, the court dismissed the claim against defendant Garner for failure to state a claim.

After an extension of time, plaintiff filed his response to defendant Clements' motion for summary judgment on October 10, 2006 (Docket No. 66).  On October 18, 2006, Dr. Clements filed a reply (Docket No. 70).  On November 13, 2006, plaintiff filed a sur-reply entitled, "Plaintiff's Second Memorandum In Support Of Opposition To Summary Judgment For Boyd M. Clements." (Docket No. 72).  By order entered November 21, 2006, the court ordered plaintiff's sur-reply stricken from the record, and advised plaintiff that if he wished to file a sur-reply, he would be required to file for leave of court.

On December 5, 2006, plaintiff filed a "Motion Requesting The Court Not To Strike Plaintiff's Second Memorandum In Support of Opposition To Summary Judgment For Boyd M. Clements" and motion for appointment of counsel. On December 6, 2006, plaintiff filed a "Request Motion For Leave Of Court," requesting leave of court to file a sur-reply. By order entered February 8, 2007, the court granted plaintiff's motion for leave to file a sur-reply and advised the parties that plaintiff's sur-reply (Docket No. 72) would be considered. On March 7, 2007, plaintiff submitted a document entitled "Sur-reply in Opposition to Summary Judgement for Boyd Clements." (Docket No. 81). When the court granted plaintiff's motion to file a sur-reply, the court specifically stated that this meant that "Plaintiff's Second Memorandum In Support Of Opposition To Summary Judgment For Boyd M. Clements" (Docket No. 72) would be considered. The court did not grant plaintiff leave to file yet another sur-reply. Accordingly, plaintiff's "Sur-reply in Opposition to Summary Judgement for Boyd Clements" (Docket No. 81) is **ORDERED STRICKEN** from the record. All parties have had sufficient opportunity to present all evidence they wished the court to consider. Accordingly, this matter is ripe for judicial determination. Before the court are defendant Wright and Langford's motion to dismiss, defendant Clements' motion for summary judgment, and defendants Johnson, Stephens, and Schilling's motion for summary judgment.

## II. Facts

Plaintiff is incarcerated at Sussex I State Prison. Gene Johnson is the Director of the Virginia Department of Corrections. Harvard Stephens is the Chief Physician for the Virginia Department of Corrections. Fred Schilling is the Health Services Director for the Virginia Department of Corrections. Ed Wright is the Chief Warden at Lawrenceville Correctional Center. Boyd Clements is the Chief Medical Director at Lawrenceville Correctional Center. W. Langford is a nurse at Lawrenceville Correctional Center.

Plaintiff received a gunshot wound in the upper arm/shoulder area on July 4, 1995. Plaintiff went to the hospital for examination. The examination notes, submitted by plaintiff, reveal that the wound was in the proximity of a nerve bundle, but that there did not appear to be either nerve damage or arterial damage. During the examination, plaintiff became disgruntled when the police came to the hospital to tell him he was being charged for the incident that resulted in his being shot. Plaintiff did not have the bullet removed at that time. Plaintiff was arrested and subsequently convicted.

Plaintiff was incarcerated at Powhatan Correctional Center. On January 19, 1996, an x-ray revealed that a bullet fragment remained lodged in plaintiff's left axilla. On November 27, 1997, plaintiff complained of headaches. Plaintiff continued to complain of headaches until his transfer to Sussex I State Prison on July 2,

1999.  Upon arrival at Sussex I State Prison, plaintiff advised medical personnel that he was having constant headaches, spinal pain, chest pains, and burning in his eyes.  Plaintiff claims his pains were deemed somatic and anxiety related and he received only cursory treatment in the form of Tylenol and Naproxen.  Plaintiff developed a knot on the left side of his neck.  This knot was noted in plaintiff's medical records on November 21, 2000.

Plaintiff was transferred to Lawrenceville Correctional Center on October 30, 2001.  Plaintiff again complained of various pains and received treatment, in the form of various pain relievers, that plaintiff claims did not alleviate his pain. Dr. Clements examined plaintiff on a number of occasions.  Dr. Clements' affidavit outlines the tests performed on plaintiff.  On March 10, 2002, plaintiff was examined by a neurologist, who performed a battery of tests including a CT of plaintiff's head.  On May 17, 2002, x-rays were taken of plaintiff's cervical spine.  The results of all these tests were unremarkable.  The only finding was mild degenerative changes to plaintiff's spine.  On March 1, 2004, plaintiff underwent an MRI of the cervical spine.  Again, the only finding was mild degenerative changes.  On the same day, thoracic x-rays were taken with no significant findings.  Numerous laboratory studies were conducted and cardiovascular tests were conducted with normal results.

Plaintiff claims that, on February 12, 2004, Dr. Clements explained to plaintiff that the bullet in his armpit could not be causing his myriad symptoms unless he had fibromyalgia.[2] However, in his affidavit, Dr. Clements asserts that plaintiff's symptoms were never completely consistent with fibromyalgia.

On August 6, 2005, Plaintiff was transferred to Sussex I State Prison. Plaintiff claims he continues to receive cursory treatment. However, this action does not name any defendants from Sussex I State Prison.

### III. Analysis

#### A. Standard for Summary Judgment

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). The moving party has the initial burden to show the

---

[2]Dr. Clements states that fibromyalgia is a clinical diagnosis of exclusion and that it is not a serious medical condition. Clements' Aff. ¶5.

7

absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25.  When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.  Such facts must be presented in the form of exhibits and sworn affidavits. Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993).  Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment when appropriate.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. 477 U.S. at 322.

Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more

than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact.  See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party.  See Anderson, 477 U.S. at 252.

B. Standard for a Motion to Dismiss

In construing a motion to dismiss, the facts alleged in plaintiff's pro se complaint must be taken as true.  Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978).  A pro se complaint, no matter how unartfully pleaded, must survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972) (per curiam).  A pro se complaint involving civil rights issues should be liberally construed.  Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Dismissal may be appropriate where the complaint contains a detailed description of underlying facts which fail to state a viable claim.  Estelle v. Gamble, 429 U.S. 97, 106-09 (1976).  However, where the complaint

is broad, dismissal for failure to state a claim is improper. Bolding v. Holshouser, 575 F.2d 461 (4th Cir. 1978). Finally, where a pro se complaint contains a potentially cognizable claim, plaintiff should be allowed to particularize the claim. Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965).

C. Applicable Eighth Amendment Law

Section 1983 emerged as the appropriate cause of action to challenge unconstitutional actions by state officials by virtue of the Supreme Court's ruling in Monroe v. Pape, 365 U.S. 167 (1961). The Court extended this remedy to prisoners in Cooper v. Pate, 378 U.S. 546 (1964), and Houghton v. Shafer, 392 U.S. 639 (1968). A court's analysis of any § 1983 claim "begins by identifying the specific constitutional right[s] allegedly infringed by the challenged" actions. Graham v. Connor, 490 U.S. 386, 394 (1989). Courts use the Eighth Amendment to scrutinize the medical treatment a prisoner receives in prison. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

To prove cruel and unusual punishment in violation of the Eighth Amendment, plaintiff must satisfy a two-prong test that has both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious." Id.; Wilson v. Seiter, 501 U.S. 294, 298 (1991). The second prong, a subjective inquiry, requires the inmate to

demonstrate that the prison officials acted, at a minimum, with "deliberate indifference" toward his or her needs. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 302-03. This subjective prong requires more than negligent conduct. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1986). For medical cases, the first component is satisfied by showing that the inmate had a serious medical condition, and the second component is satisfied by proving that the prison officials acted with deliberate indifference. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

A serious medical need, sufficient to meet the objective component, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987)). A medical need also becomes serious if the denial of or delay in treatment causes the inmate to "suffer a life-long handicap or permanent loss." Id.; see also Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994). Moreover, when an inmate alleges that the delay in treatment is the constitutional deprivation, "the objective seriousness of the deprivation should be measured 'by reference to the effect of delay

in treatment.'" Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill, 40 F.3d at 1188) (emphasis in Hill). Thus, an inmate who complains that delay in medical treatment is the constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188. In addition, the "[t]olerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Id. (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)) (alterations in original). Accordingly, delay in medical treatment claims must be "interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Id. at 1189.

To establish that a prison official acted with deliberate indifference to inmate health or safety, plaintiff must show that the prison official knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, Id. at 844. Moreover, mere malpractice or negligence in

diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105-06; Miltier, 896 F.2d at 852.

The subjective, deliberate indifference component involves a determination by the court of whether the prison official had a sufficiently culpable state of mind. Wilson, 501 U.S. at 297. In Farmer, the Supreme Court looked to the subjective state of mind of the prison official:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

511 U.S. at 837; see also Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir. 1994).

In Estelle, the Supreme Court noted three circumstances where prison officials may be found to violate the Eighth Amendment: (1) prison doctors are indifferent toward a prisoner's medical needs; (2) employees intentionally deny or delay an inmate's access to medical care; and (3) prison employees intentionally interfere with prescribed treatment. 429 U.S. at 104-05.

However, mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. Id. at 105-06; Miltier, 896 F.2d at 852. Moreover, medical care that is far from perfect is not actionable where the inmate suffers no ill effects.

Taylor v. Barnett, 105 F.Supp 2d 483,488 (E.D. Va. 2000) (citing Burton v. Cameron County Tex., 884 F. Supp. 234, 238-39 (S.D. Tex. 1995). Moreover, supervisory officials are entitled to rely on the expertise of prison doctors in treating inmates and are not deliberately indifferent in failing to intervene in treatment. Miltier, 896 F.2d at 854-55.

D. Discussion

1. Langford and Wright's Motion to Dismiss

Plaintiff's only claim regarding defendant Langford is that when he complained of pain in his neck, she suggested that he apply a warm towel to the area. At most, plaintiff claims that she failed to diagnose his complaint properly. However, mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-06; Miltier, 896 F.2d at 852. Plaintiff's claim against defendant Langford does not rise to a level of constitutional significance. Accordingly, defendant Langford's motion to dismiss is **GRANTED**.

Defendant Wright's only involvement is that he is the Chief Warden of Lawrenceville Correctional Center. Plaintiff claims that he did not intervene in his medical care. However, supervisory officials are entitled to rely on the expertise of prison doctors in treating inmates and are not deliberately indifferent in failing to intervene in treatment. Miltier, 896 F.2d at 854-55. Therefore,

14

plaintiff has failed to state a claim against defendant Wright. Accordingly, defendant Wright's motion to dismiss is **GRANTED**.

2. Dr. Clements' Motion for Summary Judgment

Plaintiff alleges that Dr. Clements has intentionally misdiagnosed his condition.  In addition, plaintiff alternately complains that Dr. Clements failed to test him for fibromyalgia and that Dr. Clements is using fibromyalgia to cover-up his failure to have plaintiff's bullet fragment removed.  However, in his affidavit, Dr. Clements explains that there is no test for fibromyalgia.  Thus, failure to test plaintiff for fibromyalgia cannot amount to deliberate indifference.  Dr. Clements does not state that he has actually diagnosed plaintiff with fibromyalgia; rather he asserts that plaintiff's symptoms are not consistent with fibromyalgia.

Dr. Clements asserts that the bullet fragment in plaintiff's armpit could not be the cause of his myriad symptoms. Dr. Clements' diagnosis is that plaintiff's "symptoms were primarily psychogenic, meaning that his symptoms were originating in his mind." Clements' Aff. ¶ 7.  Plaintiff's entire argument is that Dr. Clements has deliberately misdiagnosed his condition to avoid having to remove the bullet fragment.  Plaintiff acknowledges that Dr. Clements had numerous tests performed, but plaintiff avers that Dr. Clements chose only those tests that would yield negative results.

15

Plaintiff's only evidence is his own theory that the bullet fragment, which is near a nerve bundle, is causing pressure on the nerves, resulting in pain in various parts of plaintiff's body. Plaintiff also theorizes that the fragment is causing reduced blood circulation, and that the lump in plaintiff's neck is a result of peripheral artery disease.

Plaintiff avers that Dr. Clements has been deliberately indifferent because plaintiff has informed Dr. Clements of his theories and Dr. Clements has rejected them and told plaintiff that the bullet fragment could not be causing his various symptoms. Plaintiff alleges, moreover, that Dr. Clements has refused to have an ultrasound performed because it is the one test that will show that plaintiff has peripheral arterial disease.  In support of his contention, plaintiff submits a page from a medical article which states that physical exam, x-rays, MRA, and ultrasound are the methods used to detect peripheral arterial disease.  Other than his own assertion, plaintiff submits no medical evidence that the ultrasound will reveal anything more than the many tests that were performed.

Plaintiff's allegation of deliberate indifference is entirely predicated on the fact that Dr. Clements has rejected plaintiff's self-diagnosis.   However, mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-06; Miltier, 896 F.2d at 852.  Plaintiff

16

has failed to submit any medical evidence that establishes either that the bullet fragment caused his symptoms or that a competent medical professional would know that removal of the bullet fragment is required to relieve plaintiff's pain. Plaintiff has not carried his burden to show that there is a genuine issue of material fact. Accordingly, Dr. Clements' motion for summary judgment is **GRANTED**.

3. Defendants Johnson, Stephens, and Schilling's Motion for Summary Judgment

Plaintiff claims that through grievances and letters he advised defendants of the need to have the bullet fragment removed and that the pain medication he was prescribed was not alleviating his pain. Nevertheless, these defendants did nothing to help him. Plaintiff seeks to hold these defendants responsible for failing to overrule the medical determinations made by Dr. Clements. Therefore, it appears that plaintiff alleges that they failed to supervise Dr. Clements. However, supervisory officials are entitled to rely on the expertise of prison doctors in treating inmates and are not deliberately indifferent in failing to intervene in treatment. Miltier, 896 F.2d at 854-55. Moreover, as plaintiff has not established that Dr. Clements was deliberately indifferent to his medical needs, plaintiff cannot show that these defendants were deliberately indifferent for not intervening. Accordingly,

defendants Johnson, Stephens, and Schilling's motion for summary judgment is **GRANTED**.

### IV. Conclusion

For the aforementioned reasons, the court **GRANTS** defendants Langford's and Wright's motions to dismiss and defendants Clements', Johnson's, Stephens', and Schilling's motions for summary judgment. Accordingly this action is **ORDERED DISMISSED**.

Plaintiff is advised that he may appeal from this Memorandum Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Dismissal Order.  If plaintiff wishes to proceed <u>in forma pauperis</u> on appeal, the application to proceed <u>in forma pauperis</u> is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Memorandum Dismissal Order to plaintiff and to counsel for defendants.

IT IS SO **ORDERED**.



/s/
Rebecca Beach Smith

Norfolk, Virginia

March 26, 2007